**GOODYEAR TIRE & RUBBER CO. v. MICHELIN TIRE CO.**

(Circuit Court of Appeals, Sixth Circuit. March 8, 1927.)

No. 4529.

Patents ⬬⟹328—943,358, for pneumatic tire, claims 1, 2, and 4, held invalid for want of invention.

The Litchfield patent, No. 943,358, for pneumatic tire, claims 1, 2, and 4, *held* invalid for lack of invention.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; John M. Killits, Judge.

Suit in equity by the Goodyear Tire & Rubber Company against the Michelin Tire Company. Decree for defendant, and complainant appeals. Affirmed.

Geo. E. Cruse, of New York City (Alan N. Mann, of New York City, and Tolles, Hogsett, Ginn & Morley, of Cleveland, Ohio, on the brief), for appellant.

Ernest Wilkinson, of Washington, D. C. (John P. Murray, of New York City, and A. E. Merkel, of Cleveland, Ohio, on the brief), for appellee.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

DENISON, Circuit Judge. The appellant brought suit for infringement of the Litchfield patent upon a pneumatic tire, issued December 14, 1909, No. 943358. The court below dismissed the bill for lack of infringement. Pending this appeal the patent has expired, so that no injunction can issue; but, if the plaintiff ought to prevail, the case could be retained for accounting; hence we should pass upon the merits.

The body or carcass of such a tire was made of superposed layers of fabric properly treated. Before Litchfield, the art had begun to use also a quasi fabric, in which the threads running in one direction were much enlarged and called cords, while those in the opposite direction were minimized, so that they merely held the cords in position. Hence tires had come to be distinguished as "fabric" and "cord." To permit the necessary shaping, the cords (which we assume to be the warp threads of the fabric) were made diagonal to the tire, and the strength thus lost was restored or increased by having part of the fabric or cord layers thus diagonal in one direction and the others diagonal in the opposite direction. This crossing of the plies was carried on in all tires, no matter how many plies were used.

It seems obvious enough that, if the maker wished a four-ply tire, two in one direction and two in the other, he would fold his fabric upon itself and use a double sheet in one direction and a double sheet in the other direction, thus making his plies two and two. This would plainly be the quickest and cheapest method of making a four-ply tire; but it is also plain that each ply would be stiffened and strengthened by being placed in clinging contact, on both sides, if possible, with a cross-ply, and that, the oftener this crossing of the plies occurred in a tire, the better would be this result. Hence it came about that the practice generally prevailed of build-

ing a four-ply tire with four single plies, each crossed with the next. Litchfield says he concluded from observation that this maximum crossing of the plies did more harm than good, and that, since the resulting high resistence to distortion depended upon the intercross-ply friction, it would be better to lessen that friction by reducing the points of cross-contact. So he used what has been called the group-ply structure, by which a group of two or three plies with parallel cords should constitute a set with cords at one angle, opposed to a similar set with cords at another angle. The structure was specified in his claims, of which the first is typical. It is:

"1. A pneumatic tire comprising a set of superposed contiguous layers of thread fabric having the respective warp threads approximately parallel, and another set of contiguous layers of thread fabric having their respective warp threads approximately parallel, but at an angle, to the warp threads of the first set of layers, substantially as described."

We find it impossible to see any inventive thought in either conception or embodiment of this idea. We are as confident as may be that the teaching of the Litchfield patent has nothing to do with our present conclusion that this method of manufacture was as obvious then as it is now. Whether he should use only one thickness of his fabric, or should use two or three thicknesses, before crossing the plies, was for the constructor to decide for himself; and no inventive thought could have been involved in deciding it either way. If we may suppose that the art had generally been using a group-ply method of crossing, could it be thought that the one who had first decided to try the single-ply method was an inventor? We think not. The case might be different if Litchfield had made any new observation or discovery as to the interaction of the plies, and which he had carried into his group-ply form; but the only observation he made, and the discovery which he sets up as the base of his invention, was that two friction-producing surface contacts made more friction than one did. The fact that cross-ply intercontact would make more friction than parallel-ply contact was both obvious and familiar.

In our judgment, only some outstanding and not to be expected mechanical merit in Litchfield's selected method of crossing plies, or some clear case of general public acquiescence in the monopoly of the patent, could justify us in finding that an invention can rest upon such an unsubstantial, not to say

tenuous, support. The record does not supply, in sufficient measure, either of these aids.

As to the relative theoretical utility of the two methods: There is no convincing evidence that either should have any greater value than the other. There are some theories of merit, in construction or in operation, in favor of each; but the balance is not clear. As to actual utility: Plaintiff refers to tests said to show less power consumption for the group-ply plan, but the proof is vague. Neither conditions nor results are stated, save by the general conclusion that the tires so made gave better results. Most of the proof of this color refers to the relative merits of fabric and cord tires, and has no bearing on a comparison of group-ply and single-ply. Such proof as may be really pertinent is not impressive. Absolute uniformity in tire units made of various materials and with the changes that vulcanizing works, is impossible. Some will always be less perfect than others. Tests with them can be persuasive only when a large number of units are used to get an average, and are more persuasive if the selection of units to be tested is made under an impartial, or even a hostile, eye. Not only in the production of the units, but in the conduct of such tests, the comparability can seldom be perfect—certainly not if made under road conditions. This record produces no conviction that, in actual wearing or power-affecting qualities, the group-ply tires have any substantial net superiority. Whether they would be substantially cheaper to make would apparently depend upon the organization of the factory, the adaptability of the machinery, and the skill of the laborers.

Nor do we find any impressive public adoption and acquiescence. It is true that the Goodyear Company has sold probably 10,-000,000 tires thus constructed, but it has taken only the natural share of the whole market to which its trade position and its 600 salesmen entitle it. Its competitors sold many tens of millions, and we doubt whether the Goodyear sales would have been substantially less, if it had used and equally pushed the single-ply construction. There is no impressive acquiescence by competitors. Some of the smaller manufacturers, upon notice from the Goodyear Company that they were infringing, changed their form from group-ply to single-ply, but usually with the comment that they had not known of the patent and did not care which form they used, and there is reason to think that this comment might be in good faith. The largest manufacturers, excepting defendant, never used it, or gave

any indication that they cared to. It is an entirely reasonable inference that they thought the single-ply method was upon the whole at least as good.

Claim 3 of the patent, not in suit, pertains to an advantage in easy repair which clearly does attend a group-ply tire when there are only two groups. Patentability may be conceded to this claim; but defendant has never used the group-ply method with only two groups; its use has been only in tires containing such additional groups, or plies, that this peculiar easy repair is prohibited.

We conclude that claims 1, 2, and 4 are invalid for lack of invention. The decree is therefore affirmed.